No. 23-1042

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

SARAH FELTS,

*Plaintiff-Appellee,*

v.

MEGAN E. GREEN, in her official capacity as President of the
Board of Aldermen of the City of St. Louis,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Missouri Eastern Division (4:20-CV-00821-JAR)
The Honorable John A. Ross, United States District Judge

**BRIEF OF APPELLEE**

Lisa S. Hoppenjans
  *Counsel of Record*
Tobin Raju
WASHINGTON UNIVERSITY SCHOOL OF LAW
First Amendment Clinic
Campus Box 1120, One Brookings Drive
St. Louis, MO 63130
(314) 935-8980
lhoppenjans@wustl.edu

Maxwell Maharry
Christiana Ogletree
Craig Peters
  *Student Counsel*

Anthony Rothert
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
(314) 669-3420
arothert@aclu-mo.org

Gillian R. Wilcox
ACLU OF MISSOURI FOUNDATION
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
(314) 652-3114
gwilcox@aclu-mo.org

*Counsel for Plaintiff-Appellee*

# SUMMARY OF THE CASE

Sarah Felts filed this action pursuant to 42 U.S.C. § 1983 against Lewis Reed in his official capacity as then-President of the Board of Aldermen for the City of St. Louis. App. 373; R. Doc. 167 at 1. The district court found Reed violated Felts's First Amendment rights by blocking her from access to the interactive component of his government-controlled Twitter account (the "Account") in an act of viewpoint discrimination. *See generally* App. 373–92; R. Doc. 167 at 1–20.

In this appeal, the City does not dispute the district court's finding that Reed acted under color of state law by "maintain[ing] the Account as an elected official, us[ing] government resources—including City employees and web resources—to operate the Account, and administer[ing] the Account as a tool of governance to further his duties as Aldermanic President." App. 389; R. Doc. 167 ¶ 40. Nor does the City dispute that "Reed's decision to block [Felts] based on the content of her tweet . . . amounts to viewpoint discrimination" in violation of the First Amendment. App. 390; R. Doc. 167 ¶ 46. Rather, despite having stipulated that Reed "had the final authority regarding communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis," App. 039; R. Doc. 115 ¶ 62, the City appeals only the district court's conclusion that Reed had sufficient final policymaking authority to impose municipal liability under § 1983.

Appellee requests 10 minutes for oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE......................................................................... i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE....................................................................2

    A. Facts...........................................................................................2

    B. Procedural History....................................................................6

SUMMARY OF THE ARGUMENT ...........................................................8

ARGUMENT .............................................................................................8

I.   The district court correctly concluded that Reed was the final policymaker for communications, including the use of social media, for the Office of the President of the Board of Aldermen, such that his decision to block Felts established municipal liability under § 1983...................................9

    A. Reed had final policymaking authority regarding the Office of the President's communications, including operation of the government-controlled social media account. ...........................................11

        1. The relevant area of government business is communications, including the use of social media, by the Office of the President of the Board of Aldermen...................................................12

        2. By nature of his position, Reed was the final policymaker for communications, including the use of social media, for the Office of the President of the Board of Aldermen........................................13

        3. Even if Reed did not have final policymaking authority by virtue of his elected position, he was delegated final policymaking authority over the Office's communications, including the use of social media. ...........................................17

Appellate Case: 23-1042    Page: 3    Date Filed: 05/15/2023 Entry ID: 5277061

B.  Reed's decision to block Felts reflected a deliberate choice of a course of action. ................................................................................................22

CONCLUSION ...........................................................................................24

Appellate Case: 23-1042    Page: 4    Date Filed: 05/15/2023 Entry ID: 5277061

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angarita v. St. Louis Cnty.*,
  981 F.2d 1537 (8th Cir. 1992).................................................................. 1, 11, 13

*Atkinson v. City of Mountain View*,
  709 F.3d 1201 (8th Cir. 2013).............................................................. 11

*Christian Legal Soc'y Chapter of the Univ. of Calif.,*
  *Hastings Coll. of the Law v. Martinez*,
  561 U.S. 661 (2010) ................................................................................ 2

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ....................................................................... *Passim*

*Dean v. Cnty. of Gage*,
  807 F.3d 931 (8th Cir. 2015).......................................................... 11–12

*Flanagan v. Munger*,
  890 F.2d 1557 (10th Cir. 1989)............................................. 16, 19, 26

*Hunter v. Town of Mocksville*,
  897 F.3d 538 (4th Cir. 2018)......................................................... 20, 22

*Jett v. Dallas Ind. Sch. Dist.*,
  491 U.S. 701 (1989) .............................................................................. 10

*Kaplan v. Mayo Clinic*,
  847 F.3d 988 (8th Cir. 2017).................................................................. 2

*Mandel v. Doe*,
  888 F.2d 783 (11th Cir. 1989)............................................................. 19

*McMillian v. Monroe Cnty.*,
  520 U.S. 781 (1997) ........................................................... 8, 9–10, 11

*Mettler v. Whitledge*,
  165 F.3d 1197 (8th Cir. 1999)....................................................... 22, 23

iv

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) ........................................................................... 9

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ...................................................................*Passim*

*Robinson v. Hunt Cnty.*,
    921 F.3d 440 (5th Cir. 2019) ........................................................ 16

*Soltesz v. Rushmore Plaza Civic Ctr.*,
    847 F.3d 941 (8th Cir. 2017) ....................................................*Passim*

*Spell v. McDaniel*,
    824 F.2d 1380 (4th Cir. 1987) ...................................................... 21

*Stockley v. Joyce*,
    963 F.3d 809 (8th Cir. 2020) ................................................. 23–24

*Urban Hotel Dev. Co. v. President Dev. Grp., L.C.*,
    535 F.3d 874 (8th Cir. 2008) .......................................................... 8

*Valentino v. Vill. of S. Chicago Heights*,
    575 F.3d 664 (7th Cir. 2009) ....................................................... 20

*Ware v. Jackson Cnty.*,
    150 F.3d 873 (8th Cir. 1998) ............................................... 12–13, 19

*Williams v. Butler*,
    863 F.2d 1398 (8th Cir. 1988) ....................................................*Passim*

**Statutes**

42 U.S.C. § 1983 ......................................................................... 6, 8, 9, 12

Appellate Case: 23-1042    Page: 6    Date Filed: 05/15/2023 Entry ID: 5277061

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether the district court properly determined that then-President Reed—who operated a government-controlled Twitter account under the color of law and opened the interactive portions of the account as a designated public forum from which he blocked Felts in an act of viewpoint discrimination—was a final policymaker for the City of St. Louis with respect to communication, including the use of social media, by the Office of the President of the Board of Aldermen, such that his act violating Felts's constitutional rights was sufficient to establish municipal liability under § 1983.

- *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)

- *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)

- *Angarita v. St. Louis Cnty.*, 981 F.2d 1537 (8th Cir. 1992)

- *Williams v. Butler*, 863 F.2d 1398 (8th Cir. 1988)

1

## STATEMENT OF THE CASE

### A.    Facts

Unless otherwise footnoted, the following facts are from the district court's Findings of Fact, Conclusions of Law and Order, App. 373–392; R. Doc. 167, or the parties' pretrial Joint Stipulation of Facts, App. 034–045; R. Doc. 115. The district court's factual findings are subject to "clear error" review. *Kaplan v. Mayo Clinic*, 847 F.3d 988, 991 (8th Cir. 2017). Parties' stipulations are "binding and conclusive" on the parties "and the facts stated [therein] are not subject to subsequent variation." *Christian Legal Soc'y Chapter of the Univ. of Calif., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010). The City does not allege error in any of the district court's factual findings. The City, instead, argues that the factual findings are insufficient to demonstrate municipal liability.

Appellee Sarah Felts, a political activist and resident of the City of St. Louis, operates a Twitter account with the handle @SarahFelts. App. 034, 044; R. Doc. 115 ¶¶ 1–2, 105. Lewis Reed served as the President of the Board of Aldermen for the City of St. Louis from 2007 until his resignation on June 7, 2022. App. 034; R. Doc. 115 ¶¶ 3–4. The Office of the President of the Board of Aldermen is a division of the City of St. Louis, is an office and position established by the Charter of the City,

2

and is part of City government. App. 341–44 (Pltf-52).[1] By virtue of serving as President of the Board of Aldermen, Reed was "vested with inherent authority over the affairs of the President's Office." App. 383; R. Doc. 167 ¶ 29. Reed had ultimate authority over all other employees who worked in the Office of the President of the Board of Aldermen (also referred to as the "Office" or "Office of the President"), and all of Reed's staff ultimately reported to him. App. 035; R. Doc. 115 ¶¶ 14–15. Reed testified that with respect to how the Office operated, he "did not answer to anyone 'within the structure of the City of St. Louis government.'" App. 035; R. Doc. 115 ¶ 16. Reed made "decisions about policies" regarding who is "authorized to communicate on behalf of the office." App. 035; R. Doc. 115 ¶ 17. Reed himself also drafted press releases for the Office. App. 035; R. Doc. 115 ¶ 18.

The Office of the President was not subject to certain constraints that bound other City departments. Significantly, although "the City's Department of Personnel has a Social Media Policy . . . establishing rules for managing the City's official social media sites and accounts," "[t]he City's social media policy does not apply to

---

[1] The City Charter, City ordinances, and board rules admitted as trial exhibits reflect that Reed had broad powers over the Office of the President, including certain unilateral powers not shared by other members of the Board of Aldermen. App. 341–44 (Pltf-52); App. 332–34 (Pltf-1); App. 335–36 (Pltf-2); App. 339 (Pltf-50); *see also* Supp. App. 1–5; R. Doc. 138 at 1–5 (clerk's list of admitted trial exhibits). These exhibits are not electronically available on the district court docket and do not have a district court docket number. When citing to these pages of the Joint Appendix, Appellee has included a parenthetical indicating which trial exhibit is referenced.

3

elected officials such as Reed or to his appointed staff." App. 378; R. Doc. 167 ¶¶ 18–19. Thus, "as the elected President . . . Reed was free to ignore the City of St. Louis' social media policies issued by the director of personnel." App. 039; R. Doc. 115 ¶ 58. When asked to identify any governmental policies relating to social media that Reed abided by while operating the Account, Reed replied "None." App. 039; R. Doc. 115 ¶ 59–60. The City stipulated "Reed had the final authority regarding communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis." App. 039; R. Doc. 115 ¶ 62.

Reed created the Account in March 2009, well into his tenure as President of the Board of Aldermen, and it operated most frequently under the handle "@PresReed." App. 038; R. Doc. 115 ¶¶ 44, 48. Reed oversaw and posted to the Account. App. 038; R. Doc. 115 ¶¶ 45, 52. "Nothing in the record indicates Reed used the account to announce his candidacy for any office, solicit campaign donations, post about his campaigns, or discuss events for his political party. Rather, Reed used the Account to discuss official government business and interact with other Twitter users about that government business." App. 379; R. Doc. 167 ¶ 23 (describing eleven examples of Reed using his Account to conduct official government business). Because the Account was "public," anyone was permitted to view Reed's posts, and any Twitter member who was not blocked could "like," "retweet," or "reply" to them. App. 039; R. Doc. 115 ¶ 64.

Appellate Case: 23-1042    Page: 10    Date Filed: 05/15/2023 Entry ID: 5277061

In 2019, "Reed issued a directive to create and/or modify the official webpage for the Office of the President of the Board of Aldermen within the City's website to include a link to the Account." App. 378; R. Doc. 167 ¶ 15. At Reed's direction, and with the assistance of the City's IT department, "the Account was embedded . . . in the webpage for the Office of the President of the Board of Aldermen within the website for the City of St. Louis . . . and included a live feed of Reed's Twitter posts." *Id.*[2] Two staff members in the Office of the President also "had login credentials" and "proposed and reviewed the contents of tweets, posted tweets from the Account at Reed's direction, and created graphics for posting on the Account." App. 379; R. Doc. 167 ¶ 22.

In January 2019, the issue of closing the St. Louis Workhouse, one of two jails in the City, "was a subject of political debate." App. 377; R. Doc. 167 ¶ 10. Felts sent a tweet criticizing Reed's stance on the issue of closing the Workhouse, and in doing so "mentioned" Reed's Account, which alerted him to the contents of her tweet. App. 377; R. Doc. 167 ¶¶ 10–11; App. 037; R. Doc. 115 ¶ 34. In addition to criticizing Reed, Felts's tweet indicated her position on closing the Workhouse and

---

[2] While the City does not allege error in any of the district court's factual findings, several factual assertions in the Appellant's Brief conflict with the district court's factual findings. *See* Appellant's Br. at 4. For example, the City states that "at the request [of] Mary Goodman, a staffer of Mr. Reed," "Mr. Reed's Twitter account was embedded on his official webpage as the President of the Board of Aldermen." *Id.* However, the district court found that "the Account was embedded at Reed's direction." App. 378; R. Doc. 167 ¶ 15.

Appellate Case: 23-1042    Page: 11    Date Filed: 05/15/2023 Entry ID: 5277061

signaled to other Twitter users that they could communicate with Reed via Twitter. App. 377; R. Doc. 167 ¶¶ 10–11. Within hours, Reed blocked Felts from accessing the Account—meaning she could no longer view his tweets or otherwise interact with any aspect of the Account, including replying to his Tweets. App. 377; R. Doc. 167 ¶¶ 12–13; App. 044; R. Doc. 115 ¶ 106. "Reed made the decision to block Ms. Felts," App. 039; R. Doc. 115 ¶ 63, because of, and in response to, the views expressed in her tweet—an act of viewpoint discrimination, App. 377–78; R. Doc. 167 ¶¶ 13–14; App. 390; R. Doc. 167 ¶ 46. The City does not challenge the legal conclusion that the blocking was viewpoint discrimination.

## B.    Procedural History

On June 23, 2020, Felts filed this action against Reed in his official capacity as President of the Board of Aldermen for the City of St. Louis pursuant to 42 U.S.C. § 1983. App. 373; R. Doc. 167 at 1. The complaint alleged Reed violated Felts's First and Fourteenth Amendment rights by blocking her from the interactive component of the Account in an act of impermissible viewpoint discrimination in a designated public forum. *Id.*

In October 2021, the parties filed cross-motions for summary judgment. The district court denied both motions, finding that although "[Reed] is the final policymaker with respect to the President's social media," "there remain[ed] a

6

material question of fact as to whether the Account was operated under color of law" App. 018–019; R. Doc. 101 at 9–10.

Shortly before trial, Reed resigned as President for reasons unrelated to this lawsuit. App. 373; R. Doc. 167 at 1.[3] A bench trial was held on June 29, 2022. App. 374; R. Doc. 167 at 2. On December 9, 2022, the district court ruled in Felts's favor, finding that Reed was the final policymaker for the City with respect to communication, including use of social media, for the Office, App. 383; R. Doc. 167 ¶ 29, that he operated the Account under the color of law and his actions were thus attributable to the City, App. 389; R. Doc. 167 ¶ 40, and that blocking Felts constituted an act of impermissible viewpoint discrimination, App. 390; R. Doc. 167 ¶ 46. Felts was granted declaratory relief, nominal damages, and attorneys' fees and costs. App. 391; R. Doc. 167 at 19; *see also* R. Doc. 186; R. Doc. 187.[4]

The City appealed the single issue of "whether the District Court erred in concluding that Lewis Reed had final policymaking authority sufficient to impose § 1983 municipal liability on [the] City of St. Louis for Reed's actions on social media." Appellant's Statement of the Issue (Jan. 23, 2023).

---

[3] On June 29, 2022, following Reed's resignation, Joseph Vollmer—in his capacity as then-acting President of the Board of Aldermen—was substituted for Reed as the Defendant. R. Doc. 136. On December 13, 2022, Megan Green, in her capacity as the President of the Board of Aldermen, was substituted for Vollmer. R. Doc. 169.

[4] The orders at R. Doc. 186 and 187 granting fees and costs are not included in the parties' Joint Appendix and have not been appealed.

## SUMMARY OF THE ARGUMENT

In considering municipal liability for the act of a final policymaker under § 1983, the proper starting point is the "challenged action," *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997), here, Reed's blocking of Felts on Twitter. A court must then determine who has final policymaking authority concerning the action that caused the particular violation at issue. Here, the parties stipulated that "Reed had the final authority regarding communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis," App. 039; R. Doc. 115 ¶ 62, and the district court properly found the use of social media by the Office was within this authority, App. 383; R. Doc. 167 ¶ 29. Reed's authority to make final policy with respect to the act that violated Felts's constitutional rights—his decision to block her from the Account—establishes municipal liability under § 1983 because the Office was, and is, a division of the City.

## ARGUMENT

### *Standard of Review*

"After a bench trial, this [C]ourt reviews legal conclusions de novo and factual findings for clear error." *Urban Hotel Dev. Co. v. President Dev. Grp., L.C.*, 535 F.3d 874, 879 (8th Cir. 2008). Under the clear error standard, "there is a strong presumption that the factual findings are correct." *Id.*

8

I.     **The district court correctly concluded that Reed was the final policymaker for communications, including the use of social media, for the Office of the President of the Board of Aldermen, such that his decision to block Felts established municipal liability under § 1983.**

A municipality is liable under § 1983 for its policies that are "responsible for a deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," results in the deprivation of a citizen's constitutional rights, "the government as an entity is responsible under § 1983." *Id.* at 694. It is well established that "an unconstitutional government policy [can] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining "to deny compensation to the victim" on the basis that an action was to "be taken only once" would "be contrary to the fundamental purpose of § 1983").

Locating a final policymaker first requires identifying the action that caused the alleged constitutional violation, then determining who has policymaking authority over that specific "area of the City's business," that is, who speaks "with

9

final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian*, 520 U.S. at 785 (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989) (explaining courts must identify "those officials who have the power to make official policy on a particular issue")). On appeal, the City does not dispute the district court's conclusions that Reed operated the social media account under color of law and that the decision to block Felts violated her First Amendment rights; the sole issue on appeal is whether Reed was a final policymaker for the City with respect to this decision. Appellant's Statement of the Issue (Jan. 23, 2023); Appellant's Br. at 8. The City has stipulated that Reed "had the final authority regarding communication on behalf of the Office of the President." App. 039; R. Doc. 115 ¶ 62. This undisputed policymaking authority, which encompassed the use of social media, demonstrates that Reed, by the nature of his elected position or by delegation, was a final policymaker with respect to the block of Felts. Because the Office is an office of the City and would not exist but for its role within City government, Reed's decision to block Felts represented a policy for which the City may be properly held liable.

**A.** **Reed had final policymaking authority regarding the Office of the President's communications, including operation of the government-controlled social media account.**

To determine whether an official is a final policymaker, courts consider whether the official's decisions are subject to significant review and whether the official is bound by policies not of their own making. *Praprotnik*, 485 U.S. at 127. Being the "highest official" in an area of government, and having direct supervisory authority over that area, reflects final policymaking authority with respect to a given action. *See Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546–47 (8th Cir. 1992).

Courts "consult two sources to identify the final policymaker: '(1) state and local positive law and (2) state and local custom or usage having the force of law.'" *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1215 (8th Cir. 2013)). One may have final policymaking authority over the relevant area of the city's business as a matter of their position or, alternatively, may be delegated the requisite authority. *Pembaur*, 475 U.S. at 483. The question of who is a final policymaker is not decided in a categorical, "all or nothing" manner where final policymakers must have control over the entire municipality. *McMillian*, 520 U.S. at 785. Instead, courts ask whether government officials are final policymakers for the particular area of government business concerning the challenged action. *Pembaur*, 475 U.S. at 483; *Dean v. Cnty. of Gage*, 807 F.3d 931, 942 (8th Cir. 2015) (finding the sheriff was the final

11

policymaker for a municipality in the area of law enforcement). Here, the City stipulated that "Reed had the final authority regarding communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis," App. 039; R. Doc. 115 ¶ 62, but nevertheless maintains that this authority is not sufficient to impose municipal liability on the City itself under § 1983.

1. <u>The relevant area of government business is communications, including the use of social media, by the Office of the President of the Board of Aldermen.</u>

The challenged action is Reed's viewpoint-discriminatory blocking of Felts from the government-controlled Twitter account. And the relevant area of government business is—as the district court found—communication, including the use of social media, for the Office of the President. App. 383; R. Doc. 167 ¶ 29; App. 018; R. Doc. 101 at 9. It is not uncommon for municipalities to spread policymaking authority among various officers and bodies. *Pembaur*, 475 U.S. at 483. Therefore, different officials may have authority to establish and adjust policy in particular matters. *Id.* This Court has held that having authority over a specific area of government business, without authority over the entire municipality, is sufficient to be a final policymaker for the purposes of municipal liability. *Ware v. Jackson Cnty.*, 150 F.3d 873, 886 (8th Cir. 1998) (noting "the Supreme Court has recognized that final policymaking authority need not be all encompassing" and that an officer's exclusive control over disciplining employees made him a policymaker on personnel

matters); *Angarita*, 981 F.2d at 1547 (finding *Monell* liability for police superintendent's human resource decisions); *Williams v. Butler*, 863 F.2d 1398, 1403 (8th Cir. 1988) (finding *Monell* liability for municipal judge's decision to terminate law clerks). Like the policymakers in *Ware*, *Angarita*, and *Williams*, the President of the Board of Aldermen for the City of St. Louis is not bound by the same policies as other city actors and makes policy decisions that have force within the Office. App. 039; R. Doc. 115 ¶¶ 58–60. Because the Office of the President of the Board of Aldermen is a division of the City, the policy related to communications for that Office by that Office's policymaker attaches liability to the City itself.

> ### 2. By nature of his position, Reed was the final policymaker for communications, including the use of social media, for the Office of the President of the Board of Aldermen.

Whether an official has "final policymaking authority" is a question of state law. *Praprotnik*, 485 U.S. at 123. Here, both "state and local positive law" and "state and local custom or usage having the force of law," *Soltesz*, 847 F.3d at 946, demonstrate Reed, by nature of his position, had final policymaking authority regarding communication, including the use of social media, for the Office of the President of the Board of Aldermen.

The President of the Board of Aldermen for the City of St. Louis is vested with inherent authority over the operations of the Office of the President of the Board of Aldermen. App. 383; R. Doc. 167 ¶ 29. The Charter of the City of St. Louis

establishes, as components of the City government, the Board of Aldermen presidency and the Office of the President—separate from the board. App. 343–44 (Pltf-52).[5] The President is not simply another member of the Board of Aldermen. The City Charter and Board of Aldermen rules place the President at the top of the Office of the President's hierarchy, with unilateral powers distinct from the Board as a whole. App. 334 (Pltf-1); App. 336 (Pltf-2); App. 384; R. Doc. 167 ¶ 29 (district court finding the City Charter and rules of the Board of Aldermen make clear "the President is vested with inherent authority over the affairs of the President's Office"). Reed had exclusive authority to hire and fire employees within the Office, App. 338 (Pltf-49), direct the duties of the Office's secretary, App. 340 (Pltf-51), and served as the "'ultimate person who ha[d] authority over' the employees in the Office of the President of the Board of Aldermen," App. 035; R. Doc. 115 ¶ 14. As stated in the parties' Joint Stipulations, Reed "did not answer to anyone 'within the structure of the City of St. Louis government,'" and all of the staff within the Office "ultimately reported to him." App. 035; R. Doc. 115 ¶¶ 15–16.

---

[5] Pages 332 to 372 of the Joint Appendix are exhibits that were accepted by the district court during the bench trial, *see* Supp. App. 1–5; R. Doc. 138 at 1–5 (clerk's list of admitted trial exhibits); these exhibits are not electronically available on district court docket and do not have a district court docket number. When citing to these pages of the Joint Appendix, Appellee has included a parenthetical indicating which trial exhibit is referenced.

In addition to the broad powers over all aspects of the Office's activities, Reed had final policymaking authority over the Office's communications, including the use of social media. The City stipulated that Reed "had final authority regarding communication on behalf of the Office of the President of the Board of Aldermen for the City of St. Louis." App. 039; R. Doc. 115 ¶ 62. Reed also "made 'decisions about policies' regarding who is 'authorized to communicate on behalf of the [O]ffice,'" App. 035; R. Doc. 115 ¶ 17, and "drafted press releases," App. 035; R. Doc. 167 ¶ 18. Reed and his chief of staff, Thomas Shepard, testified that the President of the Board of Aldermen and employees within the Office of the President were not bound by City social media policies. App. 055; R. Doc. 159-1 at 22:22–25; App. 189–90; R. Doc. 159-4 at 93:23–94:17.[6] And the City stipulated that Reed, as President of the Board of Aldermen, was "was free to ignore the City of St. Louis' social media policies issued by the director of personnel," App. 039; R. Doc 115 ¶ 58; *see also* App. 378, R. Doc. 167 ¶ 19.

Both Reed's position as the highest-ranking official within the Office of the President and his admitted authority over communications of the Office demonstrate that he was the final policymaker with respect to the blocking of Felts. In *Angarita*,

---

[6] Appellee designated the deposition testimony of Thomas Shepard prior to the bench trial. App. 029–030; R. Doc. 107 at 3–4. Appellee designated the deposition testimony of Lewis Reed after the bench trial, pursuant the district court's order, R. Doc. 139. Supp. App. 006–011; R. Doc. 148 at 1–6.

Appellate Case: 23-1042     Page: 21     Date Filed: 05/15/2023 Entry ID: 5277061

this Court reasoned that since the superintendent of police was the highest-ranking official within the St. Louis County Police Department; was responsible for his entire department; and was responsible for the action causing a constitutional violation, St. Louis County could be held liable for his actions. 981 F.2d at 1547 (citing *Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir. 1989) for proposition "direct management supervision over the department was sufficient to be considered final policymaker"). As in *Angarita*, Reed was the highest ranking official in the Office, was responsible for the entire Office, and executed the action that gave rise to liability. App. 039, R. Doc. 115 ¶¶ 62–63. Similarly , in *Robinson v. Hunt Cnty.*, the Fifth Circuit determined a sheriff was a final policymaker over the Sheriff's office Facebook page because "the decision to create a Facebook page falls squarely within the sheriff's power" and the authority over the page "derive[d] from his elected position." 921 F.3d 440, 448 (5th Cir. 2019) (finding plaintiff sufficiently pleaded municipal liability based on an official policy of viewpoint discrimination on sheriff's Facebook page and reversing dismissal of claims against municipality).

Moreover, Reed's decisions were neither subject to significant review, nor was he bound by policies not of his own making with respect to social media—further compelling a finding that Reed was the final policymaker. *See Praprotnik*, 485 U.S. at 127 (whether an official's decisions are subject to significant review and whether the official is bound by policies not of their own making are critical to the

16

policymaker analysis). No one in the City reviewed Reed's decisions regarding the Office's use of social media, Reed was not bound by policies applicable to other divisions of the City, and Reed did not answer to anyone within the structure of the St. Louis government. App. 035; R. Doc. 115 ¶ 16; App. 039; R. Doc. ¶¶ 58–60. Reed created the account, controlled it, and decided who to block. App. 038–39; R. Doc. 115 ¶¶ 44, 62, 63.

<blockquote>

3.    Even if Reed did not have final policymaking authority by virtue of his elected position, he was delegated final policymaking authority over the Office's communications, including the use of social media.

</blockquote>

"States have extremely wide latitude in determining the form that local government takes," and "one may expect to find a rich variety of ways in which the power of the government is distributed among a host of different officials and official bodies." *Praprotnik*, 485 U.S. at 124–25. Final policymaking authority "may be delegated," and "municipalities often spread policymaking authority among various officers," such that "particular officers may have authority to establish binding [municipal] policy respecting particular matters." *Pembaur*, 475 U.S. at 483. Holding "a municipality liable for actions ordered by such officers exercising their policymaking authority" is not an application of the theory of respondeat superior. *Id.* at 483.

An official "possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter

of policy by the original policymaker." *Soltesz*, 847 F.3d at 946 (citing *Praprotnik*, 485 U.S. at 127). The distinction between discretion and final policymaking authority "lies in the amount of authority retained by the authorized policymakers." *Williams*, 863 F.2d at 1402; *see also Pembaur*, 475 U.S. at 481–83 (noting decisions by a municipal officer do not subject municipality to § 1983 liability, even if officer has discretion, unless that officer "possesses *final authority* to establish municipal policy with respect to the action ordered") (emphasis added).

In *Williams*, for example, this Court found that a city had delegated final policymaking authority to a municipal judge over employment matters in his court, because (1) his fired employees had "no internal avenues of appeal," and (2) the judge's "*authority was not constrained by any other policymaker*." 863 F.2d at 1402. The Court looked to the municipal judge's admissions that he "alone controlled employment matters" in his court and that he "had sole authority" to discharge his clerks. *Id.* at 1402–03. When the city argued that the municipal judge was never delegated final policymaking authority because there was no evidence that he was authorized to take that specific employment action, even if he did have discretion, the Court found that this argument "graphically illustrate[d] the City's misunderstanding of the requirements of municipal liability." *Id.* at 1403. The Court found that, upon his election, the judge "had been delegated *carte blanche*

18

authority." *Id.* at 1399, 1402. "Because he was given final policymaking authority, [the judge] was, in effect, the City." *Id.* at 1403.

In this case, the City admits that Reed "had the final authority regarding communication on behalf of" the Office. App. 039; R. Doc. 115 ¶ 62; App. 379; R. Doc. 167 ¶ 20. This admission "effectively disposes of the municipal liability issue because it all but flatly states that [Reed] was the final policymaker" in that area. *See Flanagan*, 890 F.2d at 1568 (finding that the city had delegated final policymaking authority to the police chief in disciplinary matters, because he had direct management and supervision over his department and was not subject to review).

Additionally, the City has stipulated to other facts that demonstrate that Reed had, at least, been delegated final policymaking authority over the Office. First, Reed testified that "he did not answer to anyone" within the City. App. 035; R. Doc. 115 ¶ 16; *see Ware*, 150 F.3d at 886 (finding that the lack of internal mechanisms by which the director's decisions could be reviewed supported a finding that the director had been delegated final policymaking authority). Thus, Reed's decisions were free from review. *See Soltesz*, 847 F.3d at 946–47; *see also Mandel v. Doe*, 888 F.2d 783, 794 (11th Cir. 1989) (finding that the county delegated final policymaking authority to a physician's assistant because a custom and practice developed such that he "was authorized to function without any supervision or review at all").

19

Second, Reed could identify "no [City] policies . . . applicable to [the Office] concerning social media activity." App. 039; R. Doc. 115 ¶¶ 59–60; App. 378; R. Doc. 167 ¶ 19; *see Williams*, 863 F.2d at 1403 ("We emphasize that [the judge's] authority was not constrained by any other policymaker."); *Hunter v. Town of Mocksville*, 897 F.3d 538, 555–57 (4th Cir. 2018) (finding that the town board had delegated their statutory authority over personnel decisions to the town manager, in part, by choosing not to set personnel policy for the town). In fact, the City concedes that Reed "made 'decisions about policies' regarding who is 'authorized to communicate'" for the Office, App. 035; R. Doc. 115 ¶ 17, and that he "was free to ignore the City of St. Louis' social media policies issued by the director of personnel," App. 039; R. Doc. 115 ¶ 58; App. 378; R. Doc. 167 ¶ 19. Thus, not only was Reed free of review; there were also no policy constraints on his power over the communication, including use of social media, of the Office. *See Soltesz*, 847 F.3d at 946–47; *see also Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 678 (7th Cir. 2009) (finding that the mayor was the final policymaker over hiring and firing because there were no edicts that controlled his employment decisions or any meaningful oversight or review).

This case does not involve "mere exercise of discretion." *Praprotnik*, 485 U.S. at 126. Reed had final authority over the communication—including use of social media—of the Office, answered to no one, and was not subject to any City policies

in this area. App. 035, 039; R. Doc. 115 ¶¶ 16, 58–60, 62; App. 378–79; R. Doc. 167 ¶¶ 19–20. The City retained no authority over the communication, including use of social media, for the Office. *See Williams*, 863 F.2d at 1402 (explaining mere discretionary authority and final policymaking authority is distinguished by looking to the "amount of authority retained by the authorized policymakers"). Reed's decisions regarding the communication of the Office were neither "subject to review" by an authorized policymaker nor "constrained by policies not of [his] making." *See Praprotnik*, 485 U.S. at 126–27.

"[S]tate law will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik*, 485 U.S. at 125. Even if Reed was not the final policymaker by virtue of his elected position, Reed was, at least, delegated final policymaking authority with respect to operation of the Account. App. 039; R. Doc. 115 ¶ 62; App. 379; R. Doc. 167 ¶ 20. The City did not set any social media policy for Reed's Office. App. 039; R. Doc. 115 ¶¶ 59–60; App. 378, R. Doc. 167 ¶ 19; *see Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) ("Delegation may be express . . . or implied from a continued course of knowing acquiescence by the governing body in the exercise of policymaking authority by an agency or official."). The City's Department of Personnel has a Social Media Policy, which the City has admitted does not apply to Reed or his staff. App. 039; R. Doc. 115 ¶¶ 58–60; App. 378; R.

Doc. 167 ¶¶ 18–19. If Reed were not at least a delegated final policymaker, there would be no policymakers whatsoever for the Office's use of social media—insulating the City from liability and contravening the purposes of § 1983. *See Hunter*, 897 F.3d at 558 (reasoning if the town manager were not found to be final policymaker regarding personnel decisions when town itself had made no personnel policies, town would be insulated from virtually all liability regarding personnel decisions, "a result contrary to the principles underlying Section 1983"). By delegating final policymaking authority to Reed, "the City exposed itself to liability for any unconstitutional actions taken by him pursuant to that authority." *Williams*, 863 F.2d at 1403 ("As the elected official acted so did the municipality.").

### B. Reed's decision to block Felts reflected a deliberate choice of a course of action.

In the context of *Monell*, liability attaches to a municipality where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483; *accord Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (defining a policy as "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters"). Municipalities can be held liable for the decisions of their policymakers whether the "action is to be taken only once or to be taken repeatedly." *See Pembaur*, 475 U.S. at 481, 484–85 (finding *Monell* liability

22

for a prosecutor's in-the-moment decision to command officers to forcibly enter a building). Even decisions made by policymakers that are not intended to control actions in future situations can also constitute a policy for *Monell* purposes. *Pembaur*, 475 U.S. at 481.

Reed made "a deliberate choice to follow a course of action" to block Felts from the Account. *See Pembaur*, 475 U.S. at 483. He intentionally chose to block Felts "from the Account based on the content of her tweet and to continue blocking her for months," App. 390; R. Doc. 167 ¶ 46, "among various alternatives," *id.*— including ignoring Felts's tweet, muting her account, or creating a personal account not operated as a part of his official office. Thus, his act of unconstitutional viewpoint discrimination in blocking Felts constituted a policy for purposes of *Monell* liability. App. 383; R. Doc. 167 ¶ 29.

Moreover, additional evidence in the record further supports the conclusion that Reed acted according to a "guiding principle or procedure." *Mettler*, 165 F.3d at 1204. Reed testified that he had previously blocked individuals from his Account, App. 130; R. Doc. 159-1 at 107:16–19, and in the future would block any individual who used language he perceived to be offensive or violent, such as the term "Aldergeddon," Supp. App. 033–036; R. Doc. 159-3 at 25:6–28:4, 28:5–29:8.

Finally, the City's reliance on *Stockley v. Joyce* is misplaced. In *Stockley*, this Court held that a circuit attorney's act of terminating an internal investigation and

23

charging a former officer with murder was "not a 'guiding principle or procedure,'" holding instead that it was an "individual charging decision based upon a particular set of facts supported by arguable probable cause." 963 F.3d 809, 823–24 (8th Cir. 2020). *Stockley* stands for the principle that, in the context of certain highly individualized decisions regarding prosecutorial discretion, courts will not infer a policy. *Stockley* involved a unique factual situation in which the circuit attorney was forced to make a choice between two options: to charge or not charge the individual. *Id.* Reed, on the other hand, was not forced to make a decision, and indeed did not have to act at all. He made a deliberate choice, as he had the authority to do, to block Felts, and this act within his role as President of the Board of Aldermen is sufficient to demonstrate the existence of a policy for purposes of municipal liability.

## CONCLUSION

The Supreme Court's cases defining the contours of final policymaker liability, from *Monell* to *Pembaur* to *Praprotnik*, stand for the proposition that when a government actor exercises final policymaking authority over a specific area of government (as Reed has undeniably done here) his actions taken pursuant to that authority are tantamount to actions the municipality has sanctioned or ordered. "[I]f the decision to adopt [a] particular course of action"—here, Reed's decision to block Felts on Twitter—"is properly made by that government's authorized

24

decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481.

Here, not only has the City admitted Reed's "final authority" over the area of the City's business in question, App. 039; R. Doc. 115 ¶ 62, the district court's undisputed factual findings reflect Reed also had such authority by virtue of his elected position. In the alternative, the factual findings support a conclusion that Reed had been delegated final policymaking authority. This Court should affirm the district court's judgment in favor of Plaintiff-Appellee.

Dated: May 12, 2023

Respectfully submitted,

/s/ Lisa S. Hoppenjans

Lisa S. Hoppenjans
  *Counsel of Record*
Tobin Raju
Maxwell Maharry (law student authorized
  under Eighth Circuit Rule 46B)
Christiana Ogletree (law student
  authorized under Eighth Circuit Rule
  46B)
Craig Peters (law student authorized
  under Eighth Circuit Rule 46B)
First Amendment Clinic
Washington University in St. Louis
School of Law
One Brookings Drive, Campus Box 1120
St. Louis, MO 63130
(314) 935-8980
lhoppenjans@wustl.edu
tobinraju@wustl.edu

25

Anthony Rothert
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, MO 63101
(314) 669-3420
arothert@aclu-mo.org

Gillian Wilcox
ACLU of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, MO 64111
(816) 470-9933
gwilcox@aclu-mo.org

*Counsel for Plaintiff-Appellee*

Appellate Case: 23-1042    Page: 32    Date Filed: 05/15/2023 Entry ID: 5277061

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Rule 32(a) of the Federal Rules of Appellate Procedure, undersigned counsel for Appellee certifies that the accompanying brief is printed in Times New Roman 14-point font, and including footnotes, contains no more than 13,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, and excluding the parts of the document exempted by Rule 32(f) of the Federal Rules of Appellate Procedure, the accompanying brief contains 6,553 words. In accordance with Circuit Rule 28(A)(h), counsel further certifies that this brief was scanned for viruses and is virus-free.

<u>/s/ Lisa S. Hoppenjans</u>
Lisa S. Hoppenjans
*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, I electronically filed the foregoing brief with the Clerk of the Court of the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Lisa S. Hoppenjans
Lisa S. Hoppenjans
*Counsel for Appellee*